# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  12-34953

SEAN PURCELL JETER
SHEILA ANN JETER
fka SHEILA ANN HARRIS

Debtors

## MEMORANDUM ON MOTION BY
## CHAPTER 13 TRUSTEE TO
## APPROVE SETTLEMENT

**APPEARANCES:**     LAW OFFICES OF MAYER & NEWTON
John P. Newton, Jr., Esq.
1111 Northshore Drive
Suite S-570
Knoxville, Tennessee  37919
Attorneys for Debtors

WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER, PLLC
Gregory C. Logue, Esq.
M. Aaron Spencer, Esq.
Post Office Box 900
Knoxville, Tennessee  37901
Attorneys for Atlas Legal Funding I, L.P.

WILLIAM E. MADDOX, JR., LLC
William E. Maddox, Jr., Esq.
Post Office Box 31287
Knoxville, Tennessee  37930
Attorney for Bill Hotz and Associates

GWENDOLYN M. KERNEY, ESQ.
Post Office Box 228
Knoxville, Tennessee  37901
Chapter 13 Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Motion by Chapter 13 Trustee to Approve Estate Settlement (Motion to Approve Settlement) filed by the Chapter 13 Trustee, Gwendolyn M. Kerney (Chapter 13 Trustee), on September 19, 2013, asking the court to approve a settlement reached between the bankruptcy estate and Auto-Owners Insurance Company. Under the terms of the settlement, the estate will receive $80,189.14 (Settlement Proceeds), free from subrogation liens, to be distributed as provided by the Debtors' confirmed Chapter13 plan. Atlas Legal Funding I, L.P. (Atlas Legal Funding) filed the Limited Objection of Atlas Legal Funding, I, L.P. to Motion by Chapter 13 Trustee to Approve Estate Settlement on October 16, 2013, and Bill Hotz and Associates (Bill Hotz & Associates) filed an Objection on October 22, 2013.

At a hearing held on October 23, 2013, as set forth in an Order entered on October 24, 2013, the court granted the Motion to Approve Settlement and directed that the Settlement Proceeds were to be paid by Auto-Owners Insurance Company and held in the trust account of its attorneys, Hodges, Doughty & Carson, PLLC, pending resolution of the objections raised by Atlas Legal Funding and Bill Hotz & Associates, which were to be resolved on stipulations and briefs. The parties thereafter filed the Joint Statement of Facts and Authenticity of Documents Regarding Chapter 13 Trustee's Motion to Approve Estate Asset (Joint Stipulations) on November 26, 2013, stipulating certain undisputed facts and attaching the following documents of record in the Debtors' bankruptcy case: (A) the statements and schedules filed by the Debtors on December 11, 2012; (B) the Application to Employ Counsel filed by the Debtors on January 10, 2013; (C) the Chapter 13 Trustee Objection to Confirmation filed by the Chapter 13 Trustee on January 11, 2013; (D) the Chapter 13 Trustee's Supplemental Objection to Confirmation filed by the Chapter 13 Trustee on

2

January 11, 2013; (E) the Chapter 13 Trustee's Supplemental Objection to Confirmation filed by the

Chapter 13 Trustee on January 17, 2013; (F) the Order approving employment of William A. Hotz

(Employment Order)[1] entered on February 4, 2013; (G) the Declaration Concerning Debtors'

Amended Schedule F and Amended Schedule F - Creditors Holding Unsecured Nonpriority Claims

filed on February 20, 2013, by the Debtors; (H) the Motion to Approve Compromise and Application

for Payment of Legal Fees and Expenses (Debtors' Motion to Compromise) filed by the Debtors on

February 25, 2013; (I) the Objection to Confirmation filed by Atlas Legal Funding on March 8, 2013;

(J) the Order entered on March 14, 2013, granting the Debtors' Motion to Compromise; (K) the

Order entered on March 28, 2013, overruling the Objection to Confirmation filed by Atlas Legal

Funding; (L) the Second Amended Chapter 13 Plan filed by the Debtors on April 16, 2013; (M) the

Withdrawal of Trustee's Objection to Plan filed by the Chapter 13 Trustee on April 23, 2013; (N) the

Order Confirming Chapter 13 Plan (Confirmation Order) entered on May 20, 2013; (O) the Motion

to Approve Settlement filed by the Chapter 13 Trustee on September 19, 2013; (P) the Limited

Objection of Atlas Legal Funding I, L.P. to Motion by Chapter 13 Trustee to Approve Estate

Settlement (Atlas Objection to Motion for Settlement) filed by Atlas Legal Funding on October 16,

2013; (Q) the Objection (Hotz Objection to Motion to Approve Settlement) filed by Bill Hotz &

Associates on October 22, 2013; and (R) the pretrial Order entered on October 24, 2013.[2]  The

---

[1] For purposes of this contested matter, Bill Hotz, William A. Hotz, and Bill Hotz & Associates are the same entity and references throughout this Memorandum will be to all three, interchangeably.

[2] The court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of these eighteen documents and also of the Order entered on March 28, 2013, vacating, pursuant to a Motion to Set Aside Order filed by the Chapter 13 Trustee on March 19, 2013, the Order entered on March 14, 2013, granting the Debtors' Motion to Approve Compromise and then denying the motion without prejudice.  These later two documents were not attached to the Joint Stipulations; however, because they are part of the record of this bankruptcy case, the court will rely upon them as if they were.

following stipulated exhibits are likewise attached to the Joint Stipulations: (1) an Authority to

Represent (Hotz Employment Contract) dated November 15, 2010, between Bill Hotz & Associates

and the Debtors; (2) a Facsimile Transmittal Cover Sheet from Atlas Legal Funding to Bill Hotz,

Esq. dated December 14, 2011, referencing documents attached for execution; (3) the Funding

Agreement dated December 16, 2011, executed by the Debtor Sean Jeter[3] and Atlas Legal Funding,

together with a Disclosure Statement, Irrevocable Client Directive, Attorney Acknowledgment,

Affidavit of Plaintiff, Compliance Agreement, Credit and Information Release, Distribution Form;

Notice of Right to Cancel, and Survey; (4) a letter dated February 5, 2013 from Atlas Legal Funding

to Bill Hotz & Associates; (5) a handwritten Mediation Agreement dated February 5, 2013, signed

by the Debtors, Bill Hotz, and Auto-Owners Insurance Company; and (6) an Order of Non-Suit

Without Prejudice (Voluntary Dismissal Order) filed in the Circuit Court for Knox County,

Tennessee, on September 11, 2013 in *Jeter v. McCaslin, et al.*, No. 1-316-11 (State Court Lawsuit).

Additionally, on December 10, 2013, the Chapter 13 Trustee, Atlas Legal Funding, and Bill Hotz &

Associates filed briefs in support of their respective positions.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) (2006).

## I

The following facts are not in dispute.  On November 13, 2010, Sean Jeter was involved in

an automobile accident.  JT. STIPS. at ¶ 15.  Through execution of the Hotz Employment Contract,

---

[3] Only Sean Jeter was involved in the accident and it was he who subsequently contracted with Atlas Legal Funding.  For the sake of clarity, the court will refer to the Debtor Sean Jeter by name and to Sean Jeter and Sheila Jeter, collectively, as "Debtors."

the Debtors retained Bill Hotz & Associates on November 15, 2010, to pursue damage claims, and

on July 1, 2011, the State Court Lawsuit was filed.  JT. STIPS. at ¶¶ 15-16.  At some point thereafter,

Sean Jeter contacted Atlas Legal Funding, which, on December 16, 2011, faxed the Funding

Agreement and all supporting documents, including an attorney acknowledgment, to Bill Hotz &

Associates.  JT. STIPS. at ¶¶ 17-19; STIP. EX. 2; COLL. STIP. EX. 3.  The Funding Agreement and

supporting documents were executed by Sean Jeter on December 18, 2011, and Bill Hotz executed

the attorney acknowledgment on December 19, 2011.  JT. STIPS. at ¶¶ 18-19; COLL. STIP. EX. 3.

Under the Funding Agreement, Atlas Legal Funding funded a total of $19,100.00, of which

$17,900.00 went to or for the benefit of Sean Jeter and the remaining $1,200.00 paid the application

fee of $500.00, and the origination fee of $700.00.[4]  JT. STIPS. at ¶ 20.  The Funding Agreement

provides, in material part, the following:

## RECITALS

**WHEREAS** Client represents to ALF that Client is currently engaged in a
pending legal claim and/or lawsuit or will be engaged in a legal claim and/or lawsuit.

**WHEREAS** Client has requested that ALF purchase the contingent right (or
a portion thereof) to the proceeds of Client's legal claim or lawsuit to meet Client's
immediate economic needs and ALF has agreed to purchase such contingent right to
proceeds (or a portion thereof) from Client's legal claim or lawsuit for Client's life
needs only.

. . . .

## SECTION I
## FULL DISCLOSURE

1.1 <u>Non-Recourse Funding</u>.  Non-Recourse Funding shall mean a transaction (as
described above and defined herein as a "Lawsuit") in which ALF purchases and

---

[4] The Joint Stipulation incorrectly states at ¶ 20 that Atlas Legal Funding paid a total of $19,000.00 when, in
fact, the itemization in ¶ 20 totals $19,100.00.  *See also* COLL. STIP. EX. 3 at ¶¶ 1.2, 2.6.

Client assigns the contingent right to receive an amount of the potential proceeds of a settlement, judgment, award or verdict obtained in the Client's legal claim to ALF.

1.2 <u>Transaction Terms</u>.  I have requested ALF to purchase the contingent right (or a portion thereof) to the proceeds (as that term is defined in Section 2.5) for the sum indicated below, at the instant such proceeds come into being.

| | |
|---|---|
| Principal Amount Advanced to Client: | $17,900.00 |
| Application Fee: | $500.00 |
| Origination Fee: | <u>$700.00</u> |
| **Total Amount Funded:** | $19,100.00 ("Purchase Price") |

1.3 <u>Lawsuit Terms</u>.  I have filed or have started the process of filing a complaint that may entitle me to proceeds (as that term is defined in Section 2.5) resulting from a settlement, judgment, award or verdict.  The matter is, or will be, captioned **Jeter vs. McCaslin**, stemming from an incident occurring on or about **11/13/10** and is, or will be, filed in the County of **Knox**, State of **Tennessee**, with claim or docket # **TBD** (if not yet filed list as TBD) or any other related actions (hereinafter collectively referred to as the "Lawsuit") or any other related action which shall include, without limitation, any lawsuits or claims in which I am asserting my legal rights, whether it is against the defendant(s) named in the lawsuits, or others, and shall include any claims I may or will have for the handling of my original claim or lawsuit.

### SECTION 2
### FUNDING AND REPAYMENT TERMS

2.1 <u>Consideration</u>.  In consideration for the receipt of the sum of **SEVENTEEN THOUSAND NINE HUNDRED DOLLARS AND 00/100** ($17,900.00) from ALF, I am selling and assigning to ALF all my right title and interest in, to and under an interest equal to the Purchase Price (as defined in Section 1.2 above), together with the accrued use fee (as that term is defined in Section 2.2), compounded monthly, and other fees or costs, from the proceeds of my Lawsuit to ALF.  **IF I DO NOT RECOVER ANY PROCEEDS FROM MY LAWSUIT, I WILL NOT BE OBLIGATED UNDER THIS AGREEMENT TO REPAY ATLAS LEGAL.**

**FUNDING THE AMOUNTS ADVANCED INCLUDING THE ACCRUED USE FEE, COMPOUNDED MONTHLY AND OTHER FEES OR COSTS EXCEPT AS SET FORTH IN SECTION 5 BELOW.**

2.2 <u>Use Fee</u>.  The use fee shall be a charge in an amount equal to 2.99% compounded monthly on the Purchase Price which is $19,100.00.  I will pay this use fee on the outstanding amount until I satisfy my obligation(s) under this Agreement.

2.3 <u>Repayment Schedule</u>.  ALF has calculated the total dollar amount to be repaid by you, in six-month intervals for thirty-six months, including all fees and frequency of compounding.

| Date of Payment | Amount Due | Compounding |
|---|---|---|
| 06/16/2012 | $22,793.12 | Monthly |
| 12/16/2012 | $27,200.33 | Monthly |
| 06/16/2013 | $32,459.70 | Monthly |
| 12/16/2013 | $38,736.00 | Monthly |
| 06/16/2014 | $46,225.88 | Monthly |
| 12/16/2014 | $55,163.97** | Monthly |

**This is the maximum Purchase Price I can pay to ALF even if my Lawsuit is concluded after such date.

2.4 **<u>DISCLAIMER</u>.  UPON MY REQUEST TO PAYOFF THE ADVANCE IN FULL, THE AMOUNT DUE TO ALF WILL BE CALCULATED FROM THE DATE I SIGN THIS AGREEMENT UNTIL THE CONCLUSION OF THE PERIOD IN WHICH THE DATE OF PAYMENT IS MADE TO ALF IN ACCORDANCE WITH SECTION 2.3 ABOVE.**

2.5 <u>Proceeds</u>.  The term "proceeds" shall include any money paid as a consequence of the Lawsuit.  If the amount of proceeds received is insufficient to pay the full amount due to ALF, then ALF's recovery will be limited to the proceeds of the lawsuit settlement, judgment or otherwise.

. . . .

## SECTION 3
## SECURITY INTEREST

3.1 <u>Security Interest</u>.  I hereby grant ALF a Lien and Security Interest in the proceeds of the Lawsuit.  The amount due shall be withheld from any proceeds obtained as a result of the Lawsuit and paid immediately upon collection to ALF.  the amount due shall be paid immediately after my attorney fees (including the expenses charged by my attorney for costs) and after payment of only those liens that have priority by law. I will not receive any money from the proceeds of the Lawsuit until ALF has been paid in full.  This shall also apply to any structured settlement of my Lawsuit.  I acknowledge that my receipt or use of any funds prior to the full re-payment to ALF shall constitute an illegal conversion and may well be a crime.

3.2 <u>Independent Obligation</u>.  In the event that the sale and assignment of my interest in the proceeds of the Lawsuit are not permitted by law, then I agree to pay ALF all

of the funds due under this Agreement immediately upon the payment of the Lawsuit proceeds as a separate and independent obligation.

3.3 <u>Knowledge</u>.  I hereby agree that I will not knowingly create additional liens against the proceeds without satisfaction of my lien with ALF or the prior written consent of ALF.  I specifically promise not to create any liens against the proceeds of the case as a result of any fundings or advances that I might receive after the date of this agreement similar in nature to ALF.

3.4 <u>Understandings</u>.  I understand that I am not assigning my cause of action to ALF, but rather assigning the contingent right to receive an amount of the potential proceeds of a settlement, judgment, award or verdict obtained in my legal claim to ALF for the purchase price indicated herein.

3.5 <u>Attorney's Fees</u>.  If any action or other proceeding is brought for enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with this Agreement, the prevailing Party shall be entitled to attorney's fees and other costs incurred in that action or proceeding, whether or not a lawsuit is filed, in addition to any other relief to which it or they may be entitled.

**3.6 <u>CLIENT'S RIGHT TO MAKE DECISIONS</u>.  ALF SHALL HAVE NO RIGHT TO AND WILL NOT MAKE ANY DECISIONS WITH RESPECT TO THE CONDUCT OF THE UNDERLYING CIVIL ACTION OR CLAIM OR ANY SETTLEMENT OR RESOLUTION THEREOF AND THAT THE RIGHT TO MAKE THOSE DECISIONS REMAINS SOLELY WITH CLIENT AND CLIENT'S ATTORNEY IN THE CIVIL ACTION OR CLAIM.**

**SECTION 4**
**RIGHT OF CANCELLATION**

**4.1 <u>CLIENT'S RIGHT TO CANCELLATION</u>. CLIENT MAY CANCEL THIS CONTRACT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE CLIENT RECEIVES FUNDING FROM ALF.**

4.2 <u>Cancellation</u>.  In order for the cancellation to be effective, I understand that I must return the exact amount advanced to me by ALF simultaneously with my recession.  I may do this by making personal delivery or via mail by insured, registered or certified US mail postmarked within **FIVE (5) BUSINESS DAYS** of receipt of funds from ALF to ALF's principal place of business listed above:  (A) the undeposited (or un-cashed) check provided to me by ALF; (B) a Certified or Bank check in the exact amount advanced to me by ALF; or (C) a Money Order in the exact amount advanced to me above by ALF.

8

4.3 <u>Notice of Right to Cancel</u>.  In addition to the requirement set forth herein, Client is also required to send via facsimile or mail an executed Notice of Right to Cancel within the applicable time period.

. . . .

## SECTION 7
## MISCELLANEOUS

7.1 <u>Governing Law</u>.  I agree that any disputes that may arise out of this Agreement shall be construed and interpreted under the laws of the State of New Jersey.  Venue for any dispute arising from the Agreement shall lie in Newark, New Jersey, and the Parties agree that any Federal lawsuits arising from this Agreement shall be filed and maintained in the United States District Court for the District of New Jersey in Newark, New Jersey.  The Parties understand that the "choice of law", forum, and venue clauses contained herein are critical in nature and are essential to the Agreement.

COLL. STIP. EX. 3.  In association with the Funding Agreement, Sean Jeter also executed several additional documents that comprise the collective Funding Agreement.  Most significantly, Sean Jeter executed a Disclosure Statement providing that "upon the conclusion of Client's Lawsuit, <u>CLIENT MUST</u> contact ALF for Client's <u>EXACT</u> pay-off amount."  This Disclosure Statement sets forth the repayment schedule identical to that set forth in the Funding Agreement, and contains Sean Jeter's statement that:

**I UNDERSTAND THAT NO FUNDS FROM MY PORTION OF THE SETTLEMENT, COLLECTION, JUDGMENT, COMPROMISE OR ANY OTHER COLLECTION RESULTING FROM THIS CASE WILL BE DISBURSED TO ME WITHOUT FIRST SATISFYING ATLAS LEGAL FUNDING'S LIEN.**

COLL. STIP. EX. 3.  Sean Jeter also executed an Irrevocable Client Directive addressed to his attorney, Mr. Hotz, stating, in material part:

This letter along with copies of the executed Funding Agreement, confirm that **Sean Jeter** (hereinafter referred to as "I" or "Client") am irrevocably granting a lien and security interest in the proceeds from any settlement of my pending case (as

described therein) to "Atlas Legal Funding I, L.P." (hereinafter referred to as "ALF" or "Atlas Legal Funding"). **By executing this letter I hereby instruct you as my attorney to act in accordance with the terms and conditions contained in this Irrevocable Client Directive:**

1. In order to satisfy my obligations to ALF, I instruct you upon receipt of the settlement check and/or settlement proceeds, to deposit same (whether payable to me individually, or to me jointly with your law firm) into your escrow/attorney trust account immediately.

2. Before disbursing any settlement or judgment proceeds from my claim, please have your office contact ALF . . . to confirm the amount due under the terms of my Funding Agreement. **PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY FUNDS FROM MY PORTION OF THE SETTLEMENT, COLLECTION, JUDGMENT, COMPROMISE OR ANY OTHER COLLECTION RESULTING FROM THIS CASE WITHOUT FIRST SATISFYING ATLAS LEGAL FUNDING'S LIEN.**

3. Upon disbursing any settlement or judgment proceeds from my claim, before any proceeds are distributed to me, please deduct and forward all amounts payable to ALF via mail . . .[.]

COLL. STIP. EX. 3. Sean Jeter also executed a Compliance Agreement in which he agreed to fully

cooperate with Atlas Legal Funding and agreed that "Atlas Legal Funding may in its discretion

pursue equitable relief against the undersigned for the undersigned's failure to cooperate or comply

with the terms of this agreement, and Atlas Legal Funding may recover from the undersigned its

costs, including reasonable attorney's fees, incurred in doing so." COLL. STIP. EX. 3. Additionally,

William A. Hotz executed an Attorney Acknowledgment in which he agreed that the "Irrevocable

Client Directive is a material part of the Funding Agreement" and acknowledged, among other

things, that he had reviewed the Funding Agreement, that his firm is being paid under a contingency

fee agreement with Sean Jeter, that Sean Jeter "granted Atlas Legal Funding a lien and security

interest against the proceeds" and that prior to disbursing any proceeds, he would contact Atlas Legal

Funding for a payoff and "not remit any funds or a portion thereof to my Client or on my Client's behalf until Atlas Legal Funding's lien is satisfied in full." COLL. STIP. EX. 3.

The Debtors filed the Voluntary Petition commencing their Chapter 13 bankruptcy case on December 11, 2012, and are represented by attorneys Richard Mayer and John Newton. The Debtors disclosed in their Schedule B - Personal Property joint ownership in a "Personal injury Lawsuit pending (Bill Hotz is the attorney representing)" which they assigned a value of $7,500.00. JT. STIPS. at ¶ 4; STIP. COLL. DOC. A. Atlas Legal Funding was not scheduled as a creditor by the Debtors in their statements and schedules and did not, therefore, receive notice of the bankruptcy filing until the Debtors filed, on February 20, 2013, an Amended Schedule F which added Atlas Legal Funding. JT. STIPS. at ¶¶ 5, 8, 21; STIP. DOC. G. The Chapter 13 Trustee conducted the Debtors' meeting of creditors on January 10, 2013, and on January 11, 2013, filed an objection to the confirmation of their Chapter 13 plan filed on December 11, 2012. JT. STIPS. at ¶ 6; STIP. DOC. C. Atlas Legal Funding also filed an objection to confirmation of the Debtors' plan on March 8, 2013, which was overruled as untimely under E.D. Tenn. LBR 3015-3(a) by an Order entered on March 28, 2013. JT. STIPS. at ¶ 9; STIP. DOC. I; STIP. DOC. K. The Chapter 13 Trustee subsequently withdrew her objection to confirmation on April 23, 2013, following the filing of the Debtors' Second Amended Plan on April 16, 2013, and the court entered the Order Confirming Chapter 13 Plan on May 20, 2013. JT. STIPS. at ¶ 6; STIP. DOC. L; STIP. DOC. N.

On January 10, 2013, the Debtors, through their attorneys, filed an Application to Employ Counsel in their bankruptcy case, seeking to employ, pursuant to the Bankruptcy Code, William A. Hotz to continue representing them in the pending personal injury lawsuit. JT. STIPS. at ¶ 7; STIP.

11

DOC. B.   The request for relief within the Application to Employ Counsel expressly asks that

"William A. Hotz be authorized to act as attorney for the Debtor in the personal injury lawsuit with

the understanding that this is a Chapter 13 asset with any recovery to be paid into the Debtor(s)'

Plan." JT. STIPS. at ¶ 7; STIP. DOC. B.  Additionally, the Declaration of Mr. Hotz, which was signed

under penalty of perjury and is attached to the Application to Employ Counsel, states, in material

part:

> 2.  To the best of my knowledge, information and belief, I am a disinterested person
> within the meaning of 11 U.S.C. § 101 (14), I do not hold or represent an interest
> adverse to the debtor and I am eligible to serve as counsel for the debtor.  I am not
> a creditor of the Debtor and have not previously represented the Debtor.
>
> 3.  I have no other connections to the Debtor other than the fact that I am currently
> attorney of record for the Debtor in a pending personal injury claim.

JT. STIPS. at ¶ 7; STIP. DOC. B.  On February 4, 2013, the court entered the Employment Order,

authorizing the employment of William A. Hotz.  JT. STIPS. at ¶ 7; STIP. DOC. F.  That same date,

William A. Hotz requested a current payoff under the Funding Agreement from Atlas Legal Funding

in conjunction with a mediation of the State Court Lawsuit, and Jeff Kahn, Managing Partner of

Atlas Legal Funding, provided a payoff of $32,459.70.  JT. STIPS. at ¶ 21; STIP. EX. 4.

On February 5, 2013, Mr. Hotz executed a handwritten Mediation Agreement, under which

the Debtors and Auto-Owners Insurance Company agreed to settle the personal injury claim for

$82,500.00 less $4,621.72 in subrogation claims but which makes no mention of Atlas Legal

Funding.  JT. STIPS. at ¶¶ 22-23; STIP. EX. 5.  On February 25, 2013, the Debtors, through their

attorneys, filed the Debtors' Motion to Compromise, wherein they proposed to settle the State Court

Lawsuit, pursuant to the Mediation Agreement, for the sum of $82,500.00, from which Bill Hotz &

Associates was to receive one-third attorneys' fees in the amount of $27,499.97 and expenses of $2,356.59, Nationwide Insurance Company was to receive $4,621.72 on its subrogation claim, ACS Recovery Services on behalf of Cigna was to receive $3,417.38 on its subrogation claim, and Revenue Recovery Corporation for Parkwest Medical Center was to receive $174.70 for a direct medical expense with net proceeds to the Debtors' bankruptcy estate in the amount of $44,429.64. JT. STIPS. at ¶ 10; STIP. DOC. H.  The Debtors' Motion to Compromise further stated that Atlas Legal Funding claimed a secured interest in the recovery in the amount of $32,459.70 which was disputed by the Debtors, and that the net proceeds to the estate would be $11,969.94 if Atlas Legal Funding's claim was paid.  STIP. DOC. H.  The Chapter 13 Trustee objected to the Debtors' Motion to Compromise on March 4, 2013, and the court entered an Order on March 14, 2013, granting the Debtors' Motion to Compromise with respect to the amount of the settlement only and reserved ruling on the amounts to be distributed to Bill Hotz & Associates, Nationwide Insurance Company, ACS Recovery Services, Revenue Recovery Corporation, and Atlas Legal Funding.  JT. STIPS. at ¶¶ 10-11; STIP. DOC. J.  This Order was subsequently vacated on March 28, 2013, following a Motion to Set Aside Order filed on March 19, 2013, by the Chapter 13 Trustee in which she contended, *inter alia*, that the settlement set forth in the Debtors' Motion to Compromise did not accurately reflect the mediated agreement, which was expressly contingent upon approval by the Chapter 13 Trustee that was never obtained.  JT. STIPS. at ¶¶ 12, 23.

On August 30, 2013, the Debtors, through their attorney, William A. Hotz, filed a Notice of Non-Suit Without Prejudice of the State Court Lawsuit, pursuant to which the Circuit Court for Knox County, Tennessee, entered the Voluntary Dismissal Order on September 11, 2013.  JT. STIPS.

13

at ¶ 25; STIP. EX. 6.  Following the voluntary dismissal of the State Court Lawsuit, the Chapter 13

Trustee filed the Motion to Approve Settlement on September 19, 2013, asking the court to approve

the following settlement between the bankruptcy estate and Auto-Owners Insurance Company on

behalf of Jordan McCaslin, Billy McCaslin, and Billy's Auto Sales, Inc.:

> This settlement is for the sum of $80,189.14 to be paid by Auto-Owners Insurance
> Company to the Chapter 13 Trustee for disbursement per the terms of the confirmed
> plan to creditors with allowed claims only upon receipt of a written release of liability
> executed by Sean Purcell Jeter, individually; Shelia Ann Jeter, individually; and,
> Gwendolyn M. Kerney as standing Chapter 13 Trustee on behalf of the Estate once
> this settlement has been approved by the Court.  The settlement proceeds will be
> distributed per the terms of the confirmed plan to creditors with allowed claims, free
> of any subrogation liens asserted by parties receiving notice of this motion.  This
> settlement is to the benefit of the Estate and the Chapter 13 Trustee requests approval
> of the same.

JT. STIPS. at ¶¶ 13, 26; STIP. DOC. O.  While neither objects to the amount of the settlement, both

Atlas Legal Funding and Bill Hotz & Associates object to payment of the entire $80,189.14 into the

Debtors' bankruptcy estate without payment of their respective claims under the Hotz Employment

Contract and the Funding Agreement.  Pursuant to the pretrial Order entered on October 24, 2013,

the issues before the court are (A) whether the Funding Agreement served as an absolute assignment

to Atlas Legal Funding of $32,459.70, representing the principal advancement of $17,900.00

together with accrued fees and costs, plus additional attorneys' fees and expenses, so that this

amount of the settlement proceeds does not constitute property of the estate; (B) in the event that the

entire $80,189.14 in settlement proceeds is property of the estate, whether Atlas Legal Funding holds

a lien on $32,459.70 plus attorneys' fees and expenses, so that this amount should be paid to it in

satisfaction of the lien; and (C) whether Bill Hotz & Associates is entitled to a one-third attorneys'

fee in the settlement proceeds together with reimbursement of its out-of-pocket expenses pursuant

14

to the Employment Order entered on February 4, 2013, authorizing the Debtors to employ Mr. Hotz

to represent them in the prosecution of the personal injury claim which was ultimately settled by the

Chapter 13 Trustee and Auto-Owners Insurance Company.

## II

The first issue is whether the Funding Agreement from Sean Jeter to Atlas Legal Funding

served as an absolute assignment of the $32,459.70 representing the principal amount of $17,900.00

and $14,559.70 in accrued fees and costs, plus additional attorneys' fees and expenses, such that this

amount is not property of the Debtors' bankruptcy estate.   In the event the court finds the entire

$80,189.14 Settlement Proceeds is property of the estate, the issue becomes whether Atlas Legal

Funding holds a lien on $32,459.70 together with additional attorneys' fees and expenses which must

be satisfied.   Atlas Legal Funding argues that the Funding Agreement was an absolute assignment

of the proceeds under Tennessee law.   On the other side, the Chapter 13 Trustee argues that the

Funding Agreement did not constitute an assignment under either Tennessee or New Jersey law, that

Atlas Legal Funding is a nonrecourse lender and does not have a lien in the settlement proceeds

because the underlying State Court Lawsuit had been dismissed, and that Atlas Legal Funding is not

a creditor entitled to distribution under the Debtors' confirmed plan.

As an initial matter, the issue is not whether the Settlement Proceeds were part of the

Debtors' bankruptcy estate because they unquestionably were.  Upon the filing of a bankruptcy case,

"all legal or equitable interests of the debtor in property as of the commencement of the case"

become property of the estate, 11 U.S.C. § 541(a) (2006), and "the trustee succeeds only to the title

15

and rights in property that the debtor had and takes the property subject to the same restrictions that existed at the time the debtor filed the petition." *Demczyk v. Mut. Life Ins. Co. (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997). This includes any unliquidated personal injury lawsuit and the proceeds stemming therefrom. *In re Cox*, 381 B.R. 525, 527 (Bankr. E.D. Tenn. 2008). Because the Debtors held an interest in the proceeds of any settlement or judgment arising out of their pre-petition personal injury claim on the date they filed their petition, 100% of any subsequent proceeds became property of the estate under § 541(a) on that date.[5] Notwithstanding that the entire $80,189.14 Settlement Proceeds are property of the estate, while federal law governs what comprises the bankruptcy estate, state law determines "the extent of an estate's interest in property[.]" *Graham Square, Inc.*, 126 F.3d at 827; *accord Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law."). Therefore, the true issue is the extent to which the Debtor held an interest in any settlement proceeds at the time the bankruptcy case was commenced. In its brief, Atlas Legal Funding relies solely on Tennessee law; however, the Funding Agreement expressly provides that it is governed by and that any disputes arising out of the Funding Agreement "shall be construed and interpreted under the laws of the State of New Jersey." COLL. STIP. EX. 3 at ¶ 7.1.

"[A]n assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's rights to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance." *In re Surma*, 504 B.R. 770, 776 (Bankr. D.N.J. 2014) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 317; *First Fid. Bank, N.A v. Jason Realty,*

---

[5] Both Debtors were Plaintiffs in the State Court Lawsuit.

*L.P. (In re Jason Realty, L.P.)*, 59 F.3d 423, 427 (3d Cir. 1995)).  Although "choses in action arising

out of tort are not assignable prior to judgment[,]" *Conopco, Inc. v. McCreadie*, 826 F. Supp. 855,

867 (D.N.J. 1993), as in most jurisdictions, including Tennessee, "New Jersey law generally permits

the assignment of settlement proceeds unless the parties have expressly agreed otherwise." *Owen v.*

*CNA Ins./Cont'l Cas. Co.*, 771 A.2d 1208, 1212 (N.J. 2001); *see also Costanzo v. Costanzo*,

590 A.2d 268, 271 (N.J. Super. Ct. Law Div. 1991) (holding that "[t]he right to the proceeds of the

expected settlement [of the tort claim] is assignable" since the right to money from the expected

settlement arising in the future was the specific thing being assigned).

> Generally, as a matter of public policy, a claim for damages in tort for personal
> injuries is not assignable before judgment.  N.J.S.A. 2A:25-1; *DiTolvo v. DiTolvo*,
> 131 N.J. Super. 72, 79, 328 A.2d 625 (App. Div.1974).  However, the proceeds from
> such a claim may be assigned.  *Costanzo v. Costanzo*, 248 N.J. Super. 116, 122, 590
> A.2d 268 (Law Div.1991).  N.J.S.A. 2A:25-1 provides that judgments are assignable
> and, therefore, by clear implication, any proceeds derived from a settlement of a
> claim for personal injuries must also be assignable.

*Berkowitz v. Haigood*, 606 A.2d 1157, 1159 (N.J. Super. Ct. Law Div. 1992); *see* N.J. STAT. ANN.

§ 2A:25-1 (2002) ("[A]ll judgments and decrees recovered in any of the courts of this State or of the

United States or in any of the courts of another state of the United States and all choses of action

arising on contract shall be assignable[.]").

"The precise wording determines the effect of the assignment." *Jason Realty, L.P.*, 59 F.3d

at 427.  "A valid assignment must contain clear evidence of the intent to transfer the person's rights

and the subject matter of the assignment must be described sufficiently to make it capable of being

readily identified." *Berkowitz*, 606 A.2d at 1159 (citation and internal quotation marks omitted); *see*

*also Middlesex Surgery Ctr. v. Horizon, ABC Benefit Plans 1-10*, 2013 WL 775536, at *3, 2013 U.S.

Dist. LEXIS 27278, at *8 (D.N.J. Feb. 28, 2013) ("[T]he elements of an effective assignment include

a sufficient description of the subject matter to render it capable of identification, and delivery of the

subject matter, with the intent to make an immediate and complete transfer of all right, title, and

interest in and to the subject matter to the assignee.") (citation omitted); *Cronin v. McKim-Gray*,

801 A.2d 456, 458 (N.J. Super. Ct. App. Div. 2002) (adopting the *Berkowitz* reasoning and finding

sufficient assignment language).  Additionally, "[f]or an assignment to be created, the effect must

be that the assignor retains no power to revoke the assignment." *In re Colombraro*, 230 B.R. 673,

676 (Bankr. D.N.J. 1999).

Here, the Funding Agreement unquestionably meets the first two requirements under New

Jersey law for a valid assignment.  It expressly states throughout not only the Funding Agreement,

but also the supporting documentation incorporated therein, that Sean Jeter desires to and is

transferring to Atlas Legal Funding his right to receive a portion of any settlement proceeds that he

would be entitled to receive in the future from his personal injury claim in exchange for a cash

payment of $17,900.00 from Atlas Legal Funding.  Not only does the Funding Agreement make clear

the intent of both Sean Jeter and Atlas Legal Funding, but it also sufficiently describes what is being

assigned.  While the Chapter 13 Trustee has not argued against these requirements, the same cannot

be said with respect to the final requirement that an assignment is not valid unless there is an intent

to create an irrevocable assignment.  In her brief, the Chapter 13 Trustee argues that the Funding

Agreement contains contingencies which weigh against the requirement that the assignment be

absolute or irrevocable.  Among those examples are the following:  (1) Section 1.1 entitled "Non-

Recourse Funding," which states that Sean Jeter "assigns the contingent right to receive an amount

18

of the potential proceeds[;]" (2) Section 2.1 entitled "Consideration" which states that if Sean Jeter does not recover anything from the State Court Lawsuit, he is not obligated to repay Atlas Legal Funding; (3) Section 3.4 entitled "Understandings" which states that Sean Jeter is not assigning his cause of action "but rather assigning the contingent right to receive an amount of the potential proceeds of a settlement[;]" and (4) Section 4.1 entitled "Client's Rights to Cancellation," which states that Sean Jeter "may cancel this contract without penalty or further obligation within five (5) business days from the date client receives funding from [Atlas Legal Funding]." COLL. STIP. EX. 3. That there are contingencies within the Funding Agreement, however, does not change the irrevocable nature of the assignment itself.

The "thing" being assigned by Sean Jeter to Atlas Legal Funding was a portion of any judgment or settlement proceeds which Sean Jeter would receive from the State Court Lawsuit. Because of the very nature of lawsuits, any recovery by Sean Jeter would be contingent; thus, any interest in the proceeds that Sean Jeter could assign would likewise be contingent on his actually receiving a recovery.   Contingency, however, does not equate to conditional.   The Funding Agreement was not, on the date that the Debtors filed their bankruptcy case, in any way conditional. The five-day recision period contained in Section 4.1 of the Funding Agreement and referred to by the Chapter 13 Trustee expired in December 2011, making it absolute and irrevocable beyond that date.   As of December 11, 2012, the date that the bankruptcy case was filed, Sean Jeter had no additional recision or revocation rights with respect to the Funding Agreement.   Additionally, any reliance on case law in New Jersey concerning assignments of rents, which are "defined by New Jersey's real property law" is contrary to the law with respect to personal property. *In re Ocean*

19

*Place Dev., LLC*, 447 B.R. 726, 737, 738 (Bankr. D.N.J. 2011) ("It is true that absolute assignments

may divest a debtor of any legal right to use rents, but it is also true that there is no Third Circuit case

law or supplemental evidence to suggest that this holding extends beyond assignments of interests

in *real property*.") (emphasis in original).  Accordingly, the court finds that the Funding Agreement

constitutes a valid assignment between Sean Jeter and Atlas Legal Funding that was, as of the

commencement of the Debtors' bankruptcy case, irrevocable and binding on Sean Jeter.

In her brief, the Chapter 13 Trustee also cited to and relied on *In re Minor*, a case out of the

Western District of New York, in which the bankruptcy court disapproved a chapter 7 trustee's

proposed settlement of a personal injury matter that would pay funding agreements similar to the

Funding Agreement in this case, and she urges the same result in this case.  *In re Minor*, 443 B.R.

282 (Bankr. W.D.N.Y. 2011)  The court recognizes that *Minor* is on point with respect to the facts

that the debtor entered into a pre-petition funding agreement with a company similar to Atlas Legal

Funding; however, the case is distinguishable on the law being applied.  Under New York law,

"'[a]lthough a cause of action for personal injuries is not assignable, an assignment of the proceeds

to be recovered is enforceable as an equitable assignment.'" *Minor*, 443 B.R. at 286 (quoting 6A

N.Y. Jur.2d *Assignments* § 22 (2009) (emphasis added)).  The court stated that "under New York

law, the assigning documents establish[ed] only an equitable lien[,]" and "New York law will not

enforce an equitable lien against anyone other than a contracting party."  *Minor*, 443 B.R. at 288.

Accordingly, the court held that

> If PSF held rights in equity without restriction, then arguably the assignment might
> place the tort recovery into the exclusions of section 541(d).  But here, the extent of
> PSF's equitable interest is itself limited, in that it does not reach to impair the rights
> of creditors or the trustee.  At the time of her bankruptcy filing, Ciara Minor had not

20

yet obtained a settlement of her personal injury cause of action. Consequently, by reason of the purported assignments, PSF held no more than an equitable interest in any ultimate recovery. Under New York law, however, that equitable lien could take no precedence over the interests of creditors and of their representative trustee in bankruptcy. Thus, the bankruptcy estate will include the debtor's non-assignable legal interest in her personal injury cause of action, but without impairment by an assignment that is unenforceable under New York law as against the interests of the bankruptcy trustee.

Even if the limitations of section 541(d) were relevant, the non-exempt portion of Ciara Minor's tort recovery would become property of the bankruptcy estate by reason of 11 U.S.C. § 544(a)(1). Section 541(a) of the Bankruptcy Code defines property of the estate to include not only "all legal or equitable interests of the debtor," but also any interest that the trustee may recover under 11 U.S.C. § 550. Section 550 allows a trustee to recover transfers that are avoidable under section 544. Subdivision (a)(1) of this later section gives to the trustee the rights of a creditor that obtains a judgment lien at the time of bankruptcy filing. Inferior under New York law to the interests of a judgment creditor, the assignment rights of PSF must now succumb to the powers of the trustee in bankruptcy.

*Minor*, 443 B.R. at 290. As previously discussed, however, the result under New Jersey law, which, unlike New York, has no statutory basis for the granting of an equitable lien in the event that a party assigns his or her rights to personal injury proceeds, is significantly different.

The Chapter 13 Trustee also argues that Atlas Legal Funding is not a creditor of Sean Jeter because, when the underlying State Court Lawsuit was dismissed on September 11, 2013, prior to the settlement into which she entered with Auto-Owners Insurance Company, any right to the proceeds that Atlas Legal Funding possessed was extinguished since, under the Funding Agreement, any recovery would apply only to proceeds from Sean Jeter's personal injury lawsuit. The court disagrees, however, with the Chapter 13 Trustee's reading of the Funding Agreement. Beginning in the Recitals, the Funding Agreement states that Atlas Legal Funding is taking an interest in the

proceeds arising out of Sean Jeter's legal claim or lawsuit. COLL. STIP. EX. 3 at 1. Specifically,

section 1.3, entitled Lawsuit Terms, states the following:

> 1.3 <u>Lawsuit Terms</u>. I have filed or have started the process of filing a complaint that may entitle me to proceeds (as that term is defined in Section 2.5) resulting from a settlement, judgment, award or verdict. ***The matter is***, or will be, captioned **Jeter vs. McCaslin**, ***stemming from an incident occurring on or about 11/13/10*** and is, or will be, filed in the County of **Knox**, State of **Tennessee**, with claim or docket # **TBD** (if not yet filed list as TBD) or any other related actions (hereinafter collectively referred to as the "Lawsuit") ***or any other related action which shall include, without limitation, any lawsuits or claims in which I am asserting my legal rights, whether it is against the defendant(s) named in the lawsuits, or others, and shall include any claims I may or will have for the handling of my original claim or lawsuit***.

COLL. STIP. EX. 3 at ¶ 1.3 (emphasis added). This language makes it clear that the Funding

Agreement applies to any proceeds that Sean Jeter may receive as a result of his personal injury

claim, not simply the lawsuit itself. Accordingly, it is, for the purposes of whether Atlas Legal

Funding is a creditor of Sean Jeter, irrelevant that the State Court Lawsuit was dismissed on

September 11, 2013.

The court also rejects the Chapter 13 Trustee's argument that because it was not scheduled

or noticed in the Debtors' original bankruptcy schedules and did not file a proof of claim, Atlas

Legal Funding is not a creditor of Sean Jeter pursuant to the Funding Agreement. The Bankruptcy

Code defines "creditor" as "[an] entity that has a claim against the debtor that arose at the time of

or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A) (2006), and defines

"claim" as:

> (A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

      (B) [a] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (2006).  Atlas Legal Funding fits the definition because, as of the date of the Debtors' bankruptcy filing, it held a contingent right to payment under the Funding Agreement. Because it is a creditor of Sean Jeter holding a lien against the Settlement Proceeds to the extent of its claim, Atlas Legal Funding is entitled to payment of $32,459.70 plus its reasonable attorneys' fees from the Settlement Proceeds.

**III**

Also at issue is whether William A. Hotz is entitled to his one-third attorneys' fees plus reimbursement of out-of-pocket expenses.  The Chapter 13 Trustee contends that William A. Hotz is not entitled to receive the agreed upon one-third contingency fee contracted for under the Hotz Employment Contract because he did not obtain the Settlement Proceeds for his client, because the State Court Lawsuit was dismissed on September 11, 2013, prior to the date upon which the Chapter 13 Trustee settled with Auto-Owners Insurance Company, because Mr. Hotz was not a disinterested person when he was employed by the Debtors in the bankruptcy case, and because Mr. Hotz did not provide complete disclosures to the court and the Chapter 13 Trustee in association with the case.

Under the terms of the Hotz Employment Contract, the Debtors hired Bill Hotz & Associates "to represent me in my claim for damages against any person, firm, corporation or legal entity liable therefore, resulting from: 11/13/2010 rear end auto wreck [at Western Ave. Knoxville Knox Co. TN]

caused by negligence[.]"  STIP. EX. 1.  In accordance with this representation, the Debtors agreed to

the following payment arrangements:

> It is agreed and understood that this employment is upon a contingent fee basis.  As
> compensation for their services, I agree to pay my said attorneys one third (33 &
> 1/3%) of the proceeds of my recovery.  If no recovery is made, I will not be indebted
> to my said attorneys for any sum whatsoever as attorney fees.  I agree that and [sic]
> Bill Hotz & Associates have made no promises or guarantees regarding the outcome
> of my claim. . . .  I agree that Bill Hotz & Associates shall have the discretion to
> associate additional attorneys to pursue my claim, provided however that in no event
> shall total attorney fees exceed one-third of my recovery.
>
> I hereby agree to pay for the cost of investigation, all lawsuit preparation costs, and
> should it be necessary to institute suit, the court costs and case-related expenses.  I
> understand that all expenses incurred by my attorneys shall be paid by me out of my
> portion of the proceeds of a settlement, recovery or verdict.  In the event I choose to
> terminate representation by my attorneys it is agreed and understood that I am liable
> for any expenses incurred to date, as well as attorney fees incurred at that time.
>
> . . . .
>
> No settlement of my cause of action shall be made without my full knowledge and
> approval.  I agree my attorney shall have sole authority to discuss and negotiate my
> cause of action.

STIP. EX. 1.

As an initial matter, under the Hotz Employment Contract, Bill Hotz & Associates is entitled

to receive reimbursement of any expenses or costs paid on the Debtors' behalf, which are not part

of the contingency fee and for which the Debtors remain liable even if they terminate the firm's

representation.  Accordingly, the expenses incurred by Bill Hotz & Associates in its representation

of the Debtors in their cause of action, including the State Court Lawsuit, in the amount of $2,356.59

are to be paid out of the Settlement Proceeds, irrespective of whether the firm is entitled to its one-third contingency fee.[6]

With respect to the Chapter 13 Trustee's first and second arguments, contrary to her assertions, the agreed upon contingency fee is not based upon whether Bill Hotz & Associates made a recovery in the actual State Court Lawsuit, and it is immaterial that it was the Chapter 13 Trustee and not Mr. Hotz who secured the final settlement of Sean Jeter's claims arising from his car accident.  Based upon the wording of the Hotz Employment Contract, Bill Hotz & Associates is entitled to a contingency fee from any recovery.  It does not state that Bill Hotz & Associates is entitled to a contingency fee from any recovery that *it* obtains on the Debtors' behalf.  The contingency fee is based upon whether *any* recovery is made resulting from Sean Jeter's claim arising from the November 2010 automobile accident, regardless of whether the recovery is through settlement, litigation, mediation, verdict, or judgment.  Bill Hotz & Associates is entitled to its agreed upon fee regardless of whether it was the Chapter 13 Trustee or William A. Hotz who obtained the Settlement Proceeds.  Similarly, because the contingency fee is based upon the Debtors' claim and is not based upon the existence of an actual lawsuit – just as the Funding Agreement with Atlas Legal Funding was not dependent upon the existence of an actual lawsuit – whether Bill Hotz & Associates is entitled to its contingency fee is not negated by the dismissal of the State Court Lawsuit prior to the Chapter 13 Trustee's settlement.

---

[6] The amount of expenses incurred by Bill Hotz & Associates was not included by the parties in the Joint Stipulations, nor did the firm include this amount in its Brief filed on December 10, 2013; however, the court referred to the Debtors' Motion to Compromise, included in the record as Stipulated Document H, for the amount and breakdown of expenses, a number of which were incurred prior to the filing of the State Court Lawsuit on July 1, 2011.  *See* STIP. DOC. H.

The Chapter 13 Trustee also argues that Bill Hotz & Associates is not entitled to its one-third contingency fee because William A. Hotz was not a disinterested person due to his failure to disclose Sean Jeter's Funding Agreement with Atlas Legal Funding at the time he was employed in the Debtors' bankruptcy case, stating that had she been aware of the Funding Agreement and the Attorney Acknowledgment executed by William A. Hotz, she would have objected to his employment on the ground that he was not disinterested under § 327.  In support of her argument, the Chapter 13 Trustee relies on § 327(a) and § 328(c); however, this reliance is misplaced because William A. Hotz was employed for a special purpose under § 327(e), not to represent the Debtors without restriction under § 327(a), and thus, was not required to be disinterested, although the court finds that under the facts of this case, he meets that standard as well.[7]  Employment of attorneys is governed by 11 U.S.C. § 327 (2006), which provides, in material part:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
>
> . . . .
>
> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney

---

[7] The Bankruptcy Code defines "disinterested person" as a person who:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14) (2006).

> does not represent or hold any interest adverse to the debtor or to the estate with
> respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327; *see also* FED. R. BANKR. P. 2014(a) (setting forth the information to be contained

in an application for employment of attorneys, including "the professional services to be rendered,

any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the

person's connections with the debtor, creditors, any other party in interest, their respective attorneys

and accountants, the United States trustee, or any person employed in the office of the United States

trustee."). In this case, although the Declaration of William A. Hotz filed on January 10, 2013,

references that Mr. Hotz is "a disinterested person within the meaning of 11 U.S.C. § 101(14)," the

Application to Employ Counsel itself makes it clear that Mr. Hotz was employed under § 327(e):

> 2. The Debtor requires the assistance of counsel for these purposes:
>
>> a. To represent the Debtor, including advising the Debtor, in a personal
>> injury matter with the understanding that this is a Chapter 13 asset with any
>> recovery to be paid into the Debtor(s)' Plan.
>>
>> b. To advise and consult with applicants concerning questions arising in the
>> personal injury lawsuit.
>
> 3. The Debtor requests that William A. Hotz be authorized to act as the attorney for
> the Debtor in a pending personal injury matter because he specializes in this type of
> practice and because of his experience in this field, applicant feels that said attorney
> is well qualified to render the foregoing services.

STIP. DOC. B. Section 328(c), which is relied upon by the Chapter 13 Trustee and states that

"[e]xcept as provided in section . . . 327(e), . . . the court may deny allowance of compensation for

services and reimbursement of expenses of a professional person employed under section 327 . . .

if, at any time, during such professional person's employment under section 327 . . ., such

professional person is not a disinterested person, or represents or holds an interest adverse to the

interest of the estate with respect to the matter on which such professional person is employed[,]"

11 U.S.C. § 328(c), is expressly limited by the wording of § 327(e) and does not require

disinterestedness.

> Instead,
>
> [b]y its terms, § 327(e) places three conditions on the attorney's employment. First, the employment must be for a specified special purpose and not for the general management of the debtor's bankruptcy. Second, the employment must be in the best interests of the estate, meaning that pursuit of the claim is justified by its merit and value and that the proposed attorney has expertise and familiarity with the claim. Third, the attorney to be employed must not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed. The third requirement prevents the employment of special counsel who, on any matter of substance, represent or have represented a client that is an actual or potential opponent of the estate in the dispute for which counsel would be engaged.

*In re West Pointe Props., LP*, 249 B.R. 273, 284 (Bankr. E.D. Tenn. 2000) (internal citations and

quotation marks omitted). As in this case, "this section is frequently used to employ personal injury

attorneys who represent debtors on prepetition claims." *In re Martin Designs, LLC*, 2013 WL

1195706, at *4, 2013 Bankr. LEXIS 1150, at *9 (Bankr. N.D. Ohio Mar. 22, 2013). Here,

William A. Hotz was employed for a special purpose and not to represent the Debtors in their general

bankruptcy case. Additionally, the court finds that this employment was in the best interests of the

estate, in that the claim was justified, and William A. Hotz, as the Debtors' pre-petition attorney

litigating the claim, had the knowledge and familiarity to continue representing the Debtors in their

prosecution of Sean Jeter's claim. Although the final settlement was not obtained by William A.

Hotz, it is undisputed that he provided the legal representation to the Debtors throughout the

pendency of the State Court Lawsuit that led to the negotiated settlement offer that was originally

approved by the court but subsequently vacated and replaced by the settlement procured by the

28

Chapter 13 Trustee.  Accordingly, it is the third requirement – that Mr. Hotz not hold any interests adverse to the Debtors and/or their estate – which is the final determinative factor.

In arguing that Mr. Hotz is disinterested, the Chapter 13 Trustee has likewise argued that he possesses an interest adverse to the Debtors and/or the estate on the basis that William A. Hotz acknowledged and agreed to the Funding Agreement with Atlas Legal Funding but did not disclose the transaction to the court in his Application to Employ Counsel filed in the Debtors' bankruptcy case.

> In the absence of a definition of "interest adverse to the debtor or to the estate" in the Bankruptcy Code, the following definition has been recognized by courts:  (1) to possess . . . an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.  Whether an attorney possesses an adverse interest is an issue of fact.  There is no bright line for identifying an adverse interest; the circumstances of each case must be evaluated based on a common-sense divination of adversity or commonality.

*West Pointe Props., LP*, 249 B.R. at 285 (internal citations and quotation marks omitted); *see also RFCBC, Inc. v. Kovacs (In re Nat'l Staffing Servs., LLC)*, 2007 WL 2079881, at *3, 2007 U.S. Dist. LEXIS 50944, at *7 (N.D. Ohio July 13, 2007).  The Chapter 13 Trustee accurately argues in her brief that "an attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments[,]" *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720 (6th Cir. 2001); however, her reliance on that particular case, which addressed fees sought by the attorney for the debtors under 11 U.S.C. § 329 (2006) and the failure to fully disclose prepetition fees that had been billed but not disclosed on the statement of attorney compensation required by Rule 2016 of the Federal Rules of Bankruptcy Procedure, is misplaced.  Furthermore, the court

disagrees with the Chapter 13 Trustee's argument that "Hotz had acknowledged and agreed to the substantial assignment of the proceeds to Atlas, and at the same time, Hotz was employed by the Debtor to maximize the proceeds to the Debtor's bankruptcy estate for the benefit of the creditors and the Debtor."

It is undisputed that William A. Hotz did not advise the Chapter 13 Trustee about the existence of the Funding Agreement with Atlas Legal Funding; however, his failure to do so is not fatal to his entitlement to receive the agreed upon legal fees with the Debtors.  Under the Hotz Employment Contract, William A. Hotz agreed to represent the Debtors in their personal injury claim, just as he agreed to continue doing under the terms of the Application to Employ Counsel and the Employment Order entered in this bankruptcy case.  At no time, however, did William A. Hotz represent Atlas Legal Funding, and neither he nor his firm entered into a contractual relationship with Atlas Legal Funding.  The Funding Agreement was contracted between Sean Jeter and Atlas Legal Funding.  In signing the Attorney Acknowledgment, William A. Hotz simply acknowledged the existence of the Funding Agreement, acknowledged that Sean Jeter had granted a lien and security interest in any recovery proceeds obtained as a result of his personal injury claim to Atlas Legal Funding, and acknowledged that "[p]rior to making any distribution to [Sean Jeter] from the settlement check, and/or settlement proceeds, [William A. Hotz would] contact Atlas Legal Funding to ascertain the total amount due to Atlas Legal Funding and [would] not remit any funds or a portion thereof to [Sean Jeter] or on [Sean Jeter's] behalf until Atlas Legal Funding's lien is satisfied in full." COLL. EX. 3.  Nothing within this document, however, places William A. Hotz and Atlas Legal Funding in an attorney/client relationship, sets up a special fee arrangement whereby William A.

30

Hotz agreed to pay any portion of his fees to Atlas Legal Funding, or sets forth any damages to which

Atlas Legal Funding would be entitled to receive from William A. Hotz in the event of

noncompliance with the Funding Agreement and the Attorney Acknowledgment that William A.

Hotz would be required to disclose when he was employed by the Debtors in the bankruptcy case.

In fact, the only party with the duty to disclose the Funding Agreement between Sean Jeter and Atlas

Legal Funding was Sean Jeter, and it was not incumbent upon William A. Hotz to confirm that such

disclosure had been made or to advise Sean Jeter to do so since his representation of the Debtors was

*only* with respect to the personal injury claim.  Accordingly, because the court finds that William A.

Hotz did not and does not hold any interest adverse to the Debtors or their bankruptcy estate, there

is no basis to deny compensation under § 328(c), and William A. Hotz is entitled to receive payment

from the Settlement Proceeds of his agreed upon one-third contingency fee of $26,729.71 plus

reimbursement of his expenses in the amount of $2,356.59 for a total of $29,086.30.[8]

In summary, Hodges, Doughty & Carson, PLLC will be directed to immediately remit the

Settlement Proceeds of $80,189.14 to the Chapter 13 Trustee.  From the Settlement Proceeds, the

Chapter 13 Trustee will be directed to make, at the appropriate time, the following disbursements:

(1) $32,495.70, plus reasonable attorney fees and expenses to be determined by the court, to Atlas

Legal Funding; (2) $29,086.30, inclusive of his $26,729.71 attorney fee and $2,356.59 to reimburse

expenses, to William A. Hotz; and (3) the balance to remain property of the Debtors' Chapter 13

estate to be distributed in accordance with their confirmed Chapter 13 plan.

---

[8] In her brief, the Chapter 13 Trustee argued that Bill Hotz & Associates did not have a charging attorney's lien on the Settlement Proceeds.  Having already determined that the firm is entitled to its fees on other grounds, the court will not address this argument.

Prior to distribution of the Settlement Proceeds by the Chapter 13 Trustee, Atlas Legal Funding will be directed to file, within fourteen days, an affidavit of its attorneys, Woolf, McClane, Bright, Allen & Carpenter, PLLC, setting forth a detailed statement of the services rendered, time expended, expenses incurred, and the amounts requested attributable to the firm's representation in this contested matter.  The Chapter 13 Trustee and the Debtors will be allowed ten days after the filing of the affidavit to file an objection to the requested fee after which the court will set the fee thus determining the full amount to be distributed to Atlas Legal Funding.  The court will then issue a final order directing distribution of the Settlement Proceeds by the Chapter 13 Trustee.

An Order consistent with this Memorandum will be entered.

FILED:  March 13, 2014

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE